# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HOT SPRINGS DIVISION

**MARCUS BUSH**                                                                 **PLAINTIFF**

v.                              No. 5:17-CV-00184-BSM-JTK

**NANCY A. BERRYHILL,**
Acting Commissioner,
Social Security Administration                                                  **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Marcus Bush applied for social security disability benefits with an alleged onset date of February 2, 2012. (R. at 127). After a hearing, the administrative law judge (ALJ) denied his application. (R. at 224). The Appeals Council granted review. (R. at 231–33). After a second hearing, the ALJ once again denied Bush's application. (R. at 30). The Appeals Council denied Bush's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Bush has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

**I.      The Commissioner's Decision**

The ALJ found that Bush had the severe impairments of hip/pelvic fracture, posttraumatic stress disorder (PTSD), anxiety, degenerative disk disease of the lumbar spine with a herniated disk at L4–5, and left ankle fractures. (R. at 17). In determining Bush's residual functional capacity (RFC), the ALJ found that Bush could lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; could stand/walk a total of two hours during an eight-hour workday; could sit a total of six hours in an eight-hour workday; could push/pull 10 pounds occasionally and less than 10 pounds frequently; would require a sit/stand option involving standing or walking in 20-minute intervals and sitting for 2-hour intervals; must use an assistive device to balance while walking, but not while standing; could occasionally operate left foot controls; could understand, remember, and carry out simple, routine tasks; could make judgments and decisions in simple, work-related situations; could respond appropriately to coworkers and supervisors but would be limited to occasional incidental contact with them; could not deal with the general public; and could respond to minor changes in the work routine. (R. at 20). This RFC precluded all of Bush's past relevant work. (R. at 28). The ALJ took testimony from a vocational expert (VE) and determined that Bush could perform jobs such as machine tender or inspector. (R. at 29). The ALJ therefore held that Bush was not disabled. (R. at 29–30).

## II. Discussion

Bush argues that the ALJ failed to properly account for limitations resulting from a hand fracture and subsequent surgical repair, failed to fully account for his mental impairments, erred in finding that his impairments did not meet listing 1.02 or listing 1.04, gave undue weight to the opinion of a consultative examiner, and relied on incomplete testimony from the VE.

The Court is to affirm the ALJ's decision if it is supported by "substantial evidence in the record as a whole," which is more than a scintilla but less than a preponderance. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Even if it is possible to draw two inconsistent positions from the evidence, the Court must affirm if one of those positions represents the ALJ's findings. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court considers evidence supporting and evidence detracting from the Commissioner's decision, but it will not reverse simply because substantial evidence could support a different outcome. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

### a. Hand Impairment

Bush contends that the ALJ should have included additional manipulative limitations to account for a hand fracture that had been repaired. Bush correctly notes that the ALJ must account for all impairments in the RFC, including non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2). However, the medical records in this instance do not bear out any limitations related to Bush's hand.

Daniel Irons, M.D. conducted a consultative examination and found that Bush had normal grip in both hands, could hold a pen and write, touch fingertips to palm, oppose thumbs to fingers, and pick up a coin. (R. at 588). Mark Tait, M.D. similarly found that Bush had 5/5 grip strength bilaterally with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. (R. at 671). Bush testified to some limitations with his ability to reach and grasp. (R. at 62–64). However, there are no medical records supporting these limitations. The objective evidence indicates no limitations resulting from Bush's hand fracture, and the ALJ's exclusion of such limitations is therefore supported by substantial evidence on the record as a whole.

### b. Mental Impairments

Bush also argues that the RFC does not fully account for mental limitations arising from his posttraumatic stress disorder and depression.

Records show that Bush reported that his medications eased the symptoms of his depression. (R. at 897). Additionally, his counselors repeatedly recommended he seek assistance with job placement from Arkansas Rehabilitation Services. (R. at 886–87, 888, 1048). On one of these occasions, Bush cited as a reason for not seeking job placement that getting a job would "mess up" his disability claim. (R. at 887). The fact that Bush's counselors considered him able to work weighs against him, as does the reported effectiveness of medication in controlling his depression. The ALJ incorporated several mental limitations into the RFC, and substantial evidence supports the adequacy of those limitations.

Bush additionally argues that his hydrocodone causes drowsiness that would prevent work. (R. at 66). However, he denied side effects to his doctor. (R. at 1068). He also did not report side effects on his Pain and Other Symptoms report. (R. at 414). On his Function Report, he did not list hydrocodone as one of the medications that causes side effects, and he did not list drowsiness as a side effect of the medications he did list. (R. at 423). The undersigned cannot find that the ALJ erred by not including additional mental limitations or limitations related to medication side effects.

### c. Listings 1.02 and 1.04

Bush next maintains that the ALJ erred in finding that his impairments did not meet either listing 1.02 or listing 1.04.

A claimant must show that his impairment meets all the criteria for a listing in order to prove disability under the listing. *Jones v. Astrue*, 619 F.3d 963, 9969 (8th Cir. 2010). Bush's impairments do not meet this standard.

Bush contends that his pelvic injuries meet listing 1.02. However, listing 1.02 requires the involvement of a weight-bearing joint resulting in the inability to ambulate effectively. 20 C.F.R. Part 404, Subpt. P, App. 1. Listing 1.00B2b defines the inability to ambulate effectively as being so limited as to require the use of an assistive device that limits the functioning of both upper extremities. *Id.* The record shows that Bush uses a cane. (R. at 52). However, this does not inhibit the function of both upper extremities. As such, Bush cannot meet listing 1.02 due to his pelvic injuries.

Similarly, Bush cannot meet listing 1.04. Listing 1.04(B) requires evidence of spinal arachnoiditis, and listing 1.04(C) requires lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Neither of these conditions is present. Listing 1.04(A) requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* The record has no evidence of motor loss, muscle atrophy, or muscle weakness. In fact, different examinations show full strength in the lower extremities and no loss of sensation. (R. at 671, 822, 851, 860, 938). The evidence simply does not support a finding that Bush meets a listing, and the ALJ committed no error in finding so.

### d. Consultative Examiner's Opinion

Next, Bush asserts that the ALJ erred in heavily relying on the opinion of consultative examiner Mark Tait, M.D. Dr. Tait's report suggested that Bush had no limitations on his ability to sit, walk, and/or stand for a full workday, could lift/carry without limitations. (R. at 672). Dr. Tait also reported that it was difficult to determine

limitations regarding the left hip/pelvis because no imaging was available and whether the can was medically necessary. (R. at 672).

Bush fairly characterizes Dr. Tait's report as an outlier. Daniel Irons, M.D. found severe limitations to walking, standing, sitting, lifting, and carrying. (R. at 589). Olabode Olumofin, M.D., MPH opined that Bush would be "unable to gain employment." (R. at 1056). Regan Gallaher, M.D. stated that Bush could not sit four to six hours in an eight-hour workday, could not stand for more than two hours in an eight-hour workday, must shift from sitting to standing and walking frequently, must take longer breaks, and must have frequent breaks and be allowed to move about at will. (R. at 871–72).

Although Dr. Tait's conclusions do not mesh with those of the other physicians, the ALJ did not err. Importantly, the ALJ only granted "some weight" to Dr. Tait's opinion. (R. at 27). The ALJ also assigned "some weight" to Dr. Irons's opinion, but little weight to the opinions of Dr. Olumofin and Dr. Gallaher. (R. at 26–27). Clearly, however, the ALJ did not adopt Dr. Tait's opinion wholesale. While Dr. Tait found no limitations, the ALJ gave Bush an RFC limiting him to less than the full range of sedentary work. Furthermore, although Dr. Tait's conclusions were not in line with the other doctors' opinions, there is nothing to call into question the objective findings of his report.

A reviewing court may not reverse simply because it would have come to a different conclusion. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). It is of no import whether the undersigned would have weighed the same evidence differently, but only whether there is evidence a reasonable mind would find adequate to support the ALJ's decision. *Id.* The ALJ's decision was supported by opinion evidence and the

medical record. As the ALJ did not rely heavily on the opinion of Dr. Tait, but rather gave Bush an RFC with limitations in line with the consistent medical evidence, the undersigned can find no error.

### e. Vocational Expert Testimony

Finally, Bush argues that the ALJ improperly omitted the VE's testimony concerning subsequent hypotheticals posed by the ALJ. (R. at 74). The VE testified that a hypothetical individual with the RFC posed by the ALJ would be unable to perform any jobs existing in significant numbers in the national economy if that individual could not sustain attention and concentration without breaks less than two hours apart or if that individual would miss two days of work per month. (R. at 74).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater,* 92 F.3d 688, 694–95 (8th Cir. 2004). However, the ALJ only needs to capture the concrete consequences of the impairments, rather than using specific terminology. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). A hypothetical is sufficient if it sets forth the impairments that the ALJ accepts as true that are supported by substantial evidence. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

In this instance, the ALJ determined that the limitations in the second and third hypotheticals were not supported by the evidence. The ALJ's first hypothetical is consistent with the final RFC. As such, the ALJ was not required to include the additional limitations in the RFC, and it was not error for the ALJ to exclude them.

## III. Recommended Disposition

The ALJ sufficiently allowed for Bush's hand and mental impairments, properly found that his impairments did not meet a listing, properly weighed the opinion

evidence, and justifiably relied on VE testimony. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 16th day of May, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE